785 F.2d 43
 12 Media L. Rep. 1874
 William L. MATTHES, d/b/a The Lookout, Plaintiff-Appellant,
v.
The TOWN OF EAST FISHKILL, Francois Cross, Douglas G.
Nestler, Lawrence Fogarty, Daniel Andriano, and
William Sutter, Defendants-Appellees.
 No. 112, Docket 85-7337.
 United States Court of Appeals,
Second Circuit.
 Argued Jan. 10, 1986.
Decided March 3, 1986.
 
 William L. Matthes, pro se.
 James Fisher, New York City (Wilson, Elser, Edelman & Dicker, New York City, of counsel), for defendant-appellee East Fishkill.
 Ronald C. Blass, Poughkeepsie, N.Y. (Van DeWater and Van DeWater, Poughkeepsie, N.Y., of counsel), for defendants-appellees Wager and Cunningham.
 Before FEINBERG, Chief Judge, and VAN GRAAFEILAND, and PRATT, Circuit Judges.
 PER CURIAM:
 
 
 1
 William L. Matthes, the editor and publisher of The Lookout, a newspaper published in the East Fishkill, New York, area, was arrested for trespassing after he refused to leave a closed meeting of the East Fishkill Town Planning Board. Contending that he had an absolute right to be present at the meeting and alleging a lack of probable cause in connection with his arrest, Matthes brought this civil rights action against, inter alia, the town and the members of its planning board, seeking damages "generally of $250,000". Because we agree with the court below that Matthes failed to show that the defendants acted improperly in holding the closed meeting, we affirm the dismissal of the complaint.
 
 BACKGROUND
 
 2
 At a regularly scheduled and duly noticed public meeting of the East Fishkill Town Planning Board held on August 15, 1978, the board voted to hold a closed "executive session" during its next meeting in order to discuss pending litigation. At the board's next meeting, on September 13, 1978, after conducting regular business in open session, the board asked the public to leave so that it could hold the anticipated executive session.
 
 
 3
 Contending that the closed session would violate New York's Open Meetings Law, see N.Y.Pub.Off.Law Sec. 100 et seq. (McKinney 1986), Matthes refused to leave. After obtaining the advice of counsel as to the legality of meeting in private, the board again requested Matthes to leave. Matthes not only refused to leave the room, but even followed the board when it moved first to one and then to another alternate location. Finally, the board enlisted the aid of the local police who arrested Matthes and ultimately charged him with trespassing.
 
 
 4
 In December 1979 Matthes commenced this civil rights action alleging that his arrest was without probable cause and therefore deprived him of a constitutional right. Named as defendants were the Town of East Fishkill, its Planning Board chairman, Douglas Nestler, East Fishkill Town Attorney Francois Cross, Town Justice Lawrence Fogarty, and the two arresting officers, Daniel Andriano and William Sutter--all of whom were present at the time of Matthes's arrest.
 
 
 5
 In addition, Matthes named as defendants Richard Wager and Edward Cunningham. Wager, the publisher of the Poughkeepsie Journal, arranged for his newspaper to pay the cost of representing Matthes in connection with the trespass charge. Cunningham, a member of the law firm of Van DeWater & Van DeWater, counsel to Wager's newspaper, was engaged for that purpose and represented Matthes in his pretrial proceedings on the trespass charge. When Matthes told Wager that a trial of the trespass charge would be necessary, Wager informed Matthes that his paper would not bear the cost of such extensive representation. Shortly thereafter, Matthes discharged Cunningham as his attorney and engaged alternative counsel to represent him in connection with the trespass charge.
 
 
 6
 On January 15, 1980, both Wager and Cunningham moved, pursuant to F.R.C.P. 12(b)(6) to dismiss the complaint as it related to them. With respect to Wager, the motion was granted with prejudice. The motion was also granted with respect to Cunningham, but with leave to replead facts showing that Cunningham's actions (1) prejudiced Matthes and (2) constituted state action. Instead of taking the opportunity to replead, and after the district court denied reconsideration of its earlier dismissal as to both Wager and Cunningham, Matthes appealed to this court on April 8, 1980, but the appeal was dismissed for lack of jurisdiction.
 
 
 7
 At a trial on the merits the district court dismissed the complaint as to all remaining defendants after Matthes put in his proof. Matthes filed a notice of appeal on April 19, 1985, from that dismissal, and later filed an amended notice of appeal from the earlier order dismissing the complaint as to Wager and Cunningham.DISCUSSION
 
 
 8
 A. Wager and Cunningham.
 
 
 9
 We affirm the dismissal as to Wager and Cunningham. Wager's only action with respect to Matthes was in his capacity as publisher of the Poughkeepsie Journal when he secured counsel to represent Matthes in connection with the trespass charge. Wager was under no obligation to provide counsel and there were no facts alleged to indicate that Wager had deprived Matthes of any constitutional right. For similar reasons we affirm the dismissal as to defendant Cunningham. Cunningham's only contact with Matthes occurred when Cunningham represented Matthes on the trespass charge. Although the district court generously gave Matthes the opportunity to replead to allege a factual basis for his charges of constitutional violations, Matthes never took advantage of that opportunity. As with Wager, Matthes has failed to allege any factual basis for his allegation that Cunningham deprived him of a constitutional right. Moreover, neither Wager nor Cunningham was witness to or had any prior knowledge of the events of the September 15 meeting--the event that lies at the crux of Matthes's complaint. Under these circumstances we agree that dismissal as to defendants Wager and Cunningham was proper.
 
 
 10
 B. The remaining defendants.
 
 
 11
 With respect to the legality of the action of the remaining defendants, the district court correctly recognized that Matthes's civil rights claim turns on whether or not there was probable cause for his arrest. According to Matthes, because he had the legal right to be present for all aspects of the September 13 meeting defendants acted without probable cause and in violation of Matthes's civil rights by having him arrested for refusing to leave.
 
 
 12
 Defendants, on the other hand, argue that although Matthes was rightfully present at the first portion of the September 13 meeting, he lost that right when the executive session was commenced. Thus, when Matthes refused to leave the executive session he became a trespasser in violation of Sec. 140.05 of the New York Penal Law, which makes it a violation to knowingly enter or remain "unlawfully in or upon premises." N.Y.Penal Law Sec. 140.05 (McKinney 1975); see N.Y.Penal Law Sec. 140.00(5) (McKinney 1986) (one who defies a lawful order to leave premises "remains unlawfully" within the meaning of penal law). With these contentions in mind we turn to a consideration of the applicable portions of the legislation that lies at the heart of Matthes's complaints--New York's "Open Meetings Law".
 
 
 13
 In recognition of the fact that a democratic society functions best when "public business [is] performed in an open and public manner", N.Y.Pub.Off.Law Sec. 100 (McKinney 1986), New York's legislature passed the "Open Meetings Law". Id. That law requires that "[e]very meeting of a public body shall be open to the general public". Id. Sec. 103(a). This open meeting requirement is not, however, without exception. For example, state law authorizes a public body to meet in an "executive session" that may remain closed to the public. Id. Executive sessions are authorized in a variety of circumstances, see id. Sec. 105(1), one of which is directly applicable to the meeting at issue here. Specifically, a public body is authorized to meet in a closed executive session to consider "discussions regarding proposed, pending or current litigation". Id. Sec. 105(1)(d). Since the purpose of the nonpublic part of the meeting held on September 13, as expressed at the previous month's open meeting was to discuss pending litigation, it is clear that the board had the right to meet in executive session. In addition, the evidence indicates, as the court below found, that due notice of the impending executive session was given at the August 15 public meeting of the board.
 
 
 14
 Even assuming, as plaintiff argues, that the board's vote on August 15 to authorize its September 13 executive session failed to comply precisely with the notice requirement for executive sessions, see N.Y.Pub.Off.Law Sec. 105(1) (McKinney 1986), there is no evidence to suggest that the alleged failure was due to anything more than mere negligence which, according to New York law, is not a sufficient ground upon which to invalidate the board's action, see id. Sec. 107(1).
 
 
 15
 In sum, Matthes has failed to show any improper action by the remaining defendants either in holding the closed executive session or in requiring Matthes to leave. Since Matthes's refusal to leave the premises when properly directed to do so gave probable cause for his arrest, the judgment dismissing the complaint as against all defendants is affirmed.